SCOTT J. SAGARIA (SBN 217981)
ELLIOT W. GALE (SBN 263326)
JOE ANGELO (SBN 268542)
**SAGARIA LAW, P.C.**
2033 Gateway Pl., 5th Floor
San Jose, CA 95110
408-279-2288 ph: 408-279-2299 fax

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| RENEE MINNER, <br><br> Plaintiff, <br><br> v. <br><br> EQUIFAX, INC.; et. al., <br><br> Defendants. | Case No.: 3:16-cv-05690-JSW <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE <br><br> Date:   February 24, 2017 <br> Time:   9:00 AM <br> Room:  5, 2nd Floor <br> Place:   1301 Clay Street <br>           Oakland, CA 94612 |

Renee Minner (hereinafter "Plaintiff"), by and through her attorney's of record, Sagaria Law, P.C. hereby submits her opposition to Equifax, Inc.'s (hereinafter "Defendant") motion to dismiss Plaintiff's complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Table of Contents**

Introduction ………………………………………………………………………….. 1

Background ……………………………………………………………………. 2

Argument …………………………………………………………………………. 3

    A. Plaintiff Meets the Standard Under F.R.C.P. 12(b)(6) ………………………… 3

        a. Plaintiff's First Cause of Action Sufficiently States a Claim for a Violation of the FCRA……………………………………………………………… 3

            i. Confirmation of a Chapter 13 Plan is Res Judicata Regarding Treatment of a Creditor's Claim …………………………………….. 5

            ii. Section 1322 of the Bankruptcy Code Allows for Modification of Secured and Unsecured Debts ………………………………………... 8

            iii. Accuracy ……………………………………………………………… 9

            iv. Defendant Failed to Review and Investigate Plaintiff's Chapter 13 Plan And Treatment of Creditors ………………………………….. 11

                a. Defendant Violated the FCRA When It Failed To Follow The Metro 2 Formatting Because It Is The Industry Standard …………………………………………………………. 11

            v. Plaintiff Is Not Judicially Estopped From Bringing This Action ….. 12

Conclusion………………………………………………………………………… 13

**Table of Authorities**

Cases

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) …………………………………………….. 3

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ………………………………… 3

*Blakeney v. Experian Sols., Inc.* No. 15-CV-05544-LHK, 2016 WL 4270244 (N.D. Cal. Aug. 15, 2016) …………………………………………………………………... 6, 7, 9

*Carvalho v. Equifax Info. Svcs., LLC,* 629 F. 3d 876 (9th Cir. 2010) ………………… 4, 10

*Cassara v. DAC Serv., Inc.*, 276 F. 3d 1210 (10th Cir. 2002) .............................. 11

*Celli v. First Nat'l Bank (In re Layo)*, 460 F.3d 289 (2nd Cir. 2006) ..................... 4, 6

*Charlick v. Cmty. Choice Credit Union (In re Charlick)*, 444 B.R. 762 (Bankr. E.D. Mich. 2011) ............................................................................................................. 6

*DeAndrade v. TransUnion, LLC*, 523 F.3d 61 (1st Cir. 2008) .................................. 10

*Dreher v. Experian Info. Solutions, Inc.* 2013 WL 2389878 (E.D. Va. May 30, 2013) ........................................................................................................................... 11

*Fairshter v. Stinky Love, Inc. (In re Lacy)*, 306 Fed. Appx. 413, 421 (10th Cir. 2008) ........................................................................................................................... 7

*First Nat'l Bank (In re Layo)*, 460 F.3d 289 (2nd Cir. 2006) .............................. 4

*Gorman v. Wolpoff & Abramson, LLP*, 584 F. 3d 1147 (9th Cir. 2009) ................. 4

*Green v. McKay*, 376 S.W.3d 891 (Tex. App. 2012) ................................................. 7

*In re Coffman*, 271 B.R. 492 (Bankr. N.D. Texas 2002) ....................................... 6

*In re Ellett*, 254 F.3d 1135 (9th Cir. 2001) ............................................................ 6

*In re Fowler*, 1997 Bankr. LEXIS 2332 (Bankr. E.D. Va. 1997) ............................ 6

*In re Frazier*, 448 B.R. 803 (Bankr. E.D. Cal. 2011) ............................................... 8

*In re Gibson*, 218 B.R. 900, 904 (Bankr. E.D. Ark. 1997) ...................................... 6

*In re Gonzalez*, 388 B.R. 292 (Bankr S.D. Tex. 2008) ........................................... 8

*In re Gordon*, 2011 Bankr. LEXIS 3848 (Bankr. D. Colo. 2011) ........................... 7

*In re Monroe*, 509 B.R. 613 (Bankr. E.D. Wisc. 2014) ........................................... 8

*In re Padilla*, 379 B.R. 643 (Bankr S.D. Tex. 2007) ............................................... 8

*In re Ramey*, 301 B.R. 534, 538 (Bankr. E.D. Ark. 2003) ...................................... 6

*In re Richardson*, 192 B.R. 224 .............................................................................. 8

*In re Sanders*, 243 B.R. 326, 331 (Bankr. N.D. Ohio 2000) .................................... 6

*In re Stain*, 2013 Bankr. LEXIS 3888 at 11 (Bankr. D. Utah 2013) ..................... 7

*In re Than*, 215 B.R. 430 (9th Cir. B.A.P. 1997) .................................................. 8

*In re Underhill*, 425 B.R. 614, 618 (Bankr. D. Utah 2010) .................................... 7

*In re Waldron* 536 F. 3d 1239, 1249 (11th Cir. 2008) .......................................... 12

| | |
|---|---|
| *In re Zimmer*, 313 F. 3d. 1220 (9th Cir. 2002) ………………………………………….. | 8 |
| *Momoh v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist LEXIS 86276 (N.D. Cal, July 1, 2016) …………………………………………………………………………………….. | 13 |
| *Mortimer v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 2993 (N.D. Cal Jan. 3, 2013) ……………………………………………………………………………………... | 7, 9, 10 |
| *Nissou-Rabban v. Capital One Bank (USA), N.A.*, 2016 U.S. Dist. LEXIS 81373 ….. | 11 |
| *Parks Sch. Of Bus., Inc. v. Symington*, 51 F. 3d 1480 (9th. Cir. 1995) ……………... | 3 |
| *Poland v. Educ. Credit Mgmt. Corp. (In re Poland)*, 382 F.3d 1185 (10th Cir. 2004)……………………………………………………………………………………. | 7 |
| *Standiferd v. United States (In re Standiferd)*, 641 F.3d 1209 (10th Cir. 2011) ……. | 6 |
| *United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997) …… | 6 |

Statutes

| | |
|---|---|
| 11 U.S.C. §362(b)(2)(E) ……………………………………………………………… | 10 |
| 11 U.S.C. §541 ………………………………………………………………………… | 12 |
| 11 U.S.C. §1300 ……………………………………………………………………….. | 7 |
| 11 U.S.C. §1306(a) ……………………………………………………………………. | 12 |
| 11 U.S.C. §1322 ……………………………………………………………………..... | 9 |
| 11 U.S.C. §1322(b)(2) ……………………………………………………………....... | 2, 8 |
| 11 U.S.C. §1325 ……………………………………………………………………….. | 8 |
| 11 U.S.C. §1327 ……………………………………………………………………….. | 2, 9 |
| 15 U.S.C. §1681i(a) ………………………………………………………………….. | 4, 11 |
| Bankruptcy Rule 1009 ………………………………………………………………... | 12 |
| F.R.C.P 12(b)(6) ……………………………………………………………………..... | 1, 2, 12, 13 |

Other Authorities

| | |
|---|---|
| California Consumer Credit Reporting Agencies Act …………………………… | 2 |
| Fair Credit Reporting Act ……………………………………………………………. | 2, 3, 4, 11 |
| Metro 2 ……………………………………………………………………………….. | 3 |

PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE - 4

## INTRODUCTION

The credit reporting industry is a highly technical enterprise involving electronic data, the processing of that data, and the interpretation of that data using proprietary algorithms. Plaintiff's complaint attempts to provide adequate background into the relationship between credit reporting and a bankruptcy filing and the updates that are required to be made on the part of both furnishers of information and the credit reporting agencies. Plaintiff's complaint identifies the inaccurate and misleading reporting that often occurs when a consumer files for bankruptcy protection and a furnisher, a credit reporting agency, or both, fail to property update a consumer's credit report in light of the bankruptcy filing. There are certain standards that have been adopted in the credit reporting industry that specifically identify and address how to avoid reporting inaccurate and misleading information on a consumers report. These industry standards harmonize bedrock principles of bankruptcy law. Specifically, despite Defendant's argument to the contrary, Plaintiff's confirmed chapter 13 permanently modifies her claims under 11 U.S.C. §1322(B)(2) and 11 U.S.C. §1327. Upon confirmation, Plaintiff had a binding final judgment in Plaintiff's favor setting the amounts owed to her creditors and the manner (when and how much) in which that amount was to be paid.

Plaintiff alleges that the above captioned defendants violated both the FCRA and the California Consumer Credit Reporting Agencies Act ("CCCRAA") based on inaccurate and misleading notations made on Plaintiff's credit report after the filing and subsequent confirmation of Plaintiff's chapter 13 plan of financial reorganization.

## BAKGROUND

Plaintiff filed her complaint on October 5, 2016 alleging that the named Defendants violated both the FCRA and the CCCRAA. The substance of Plaintiff's claims arose due to a review of a post-chapter 13 confirmation review of her credit report. Plaintiff filed for chapter 13 bankruptcy protection on May 19, 2014. Her chapter 13 plan of financial reorganization was confirmed by the U.S. Bankruptcy Court on July 25, 2014. Defendant moves to dismiss Plaintiff's complaint on the grounds that it does not state a claim upon which relief can be granted under Federal Rule of Civil Procedure (hereinafter "FRCP") 12(b)(6). Defendant's

motion and analysis does not properly analyze the facts and allegations contained in the complaint and relevant supporting case law. Defendant's motion should be denied, or alternatively Plaintiff should be given leave to amend her complaint.

Defendant's motion to dismiss Plaintiff's complaint should be denied for the following reasons. The information that was being reported on Plaintiff's credit report after the confirmation of her chapter 13 plan of financial reorganization was both inaccurate and misleading and does not comport with the industry standards that cover credit reporting and bankruptcy. Plaintiff's complaint identifies that the Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies. The complaint then identifies what steps both furnishers and credit reporting agencies must take to ensure compliance under Metro 2 when a consumer files for bankruptcy, as the Metro 2 provides instruction on what updates must be made when a bankruptcy is filed. The complaint also identifies what was both inaccurate and misleading about the problematic tradelines and why the reporting is a departure from the Metro 2 industry standards and how that reporting can be expected to adversely affect credit decisions. The complaint also identifies the drastic discrepancies between the claims that were filed in Plaintiff's chapter 13 bankruptcy and what was reported on Plaintiff's credit report. The complaint also thoroughly describes the steps that Plaintiff took regarding the dispute process and highlights what Plaintiff specifically identified was inaccurate about the tradelines on her credit report.

## ARGUMENT

**A. Plaintiff Meets the Standard Under F.R.C.P. 12(b)(6)**

Under FRCP 12(b)(6) a complaint must give fair notice of the claim being asserted and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In addition to providing fair notice, the plaintiff must allege "enough facts to state a claim to relief." *Id.* Allegations amounting to a mere possibility the defendant has acted unlawfully fall short of the pleading standards required by Rule 12(b)(6). *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

However, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be draft from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. Of Bus., Inc. v. Symington*, 51 F. 3d 1480, 1484 (9th. Cir. 1995). To survive a motion to dismiss a plaintiff need only allege facts that are enough to raise his or her right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. On a Rule 12(b)(6) motion, the court does not "[r]equire heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### a. Plaintiff's First Cause of Action Sufficiently States a Claim for a Violation of the FCRA

A violation of the FCRA can occur in one of two ways: 1) "because it is patently incorrect, or (2) because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info. Svcs., LLC,* 629 F. 3d 876, 890 (9th Cir. 2010) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F. 3d 1147, 1163 (9th Cir. 2009).

Section 1681i(a) requires that a credit reporting agency "shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a).

In Plaintiff's complaint she explicitly alleges that Defendant failed to conduct a reasonable reinvestigation (see paragraphs 119 – 133 in Plaintiff's complaint). Plaintiff identified in her dispute letter sent to Equifax, Inc. that the information regarding the data furnishers accounts were inaccurate because of her bankruptcy filing (¶¶ 106 Complaint). The dispute letter stemmed from the confirmation of Plaintiff's chapter 13 plan, which bound all of his creditors to the terms contained within the plan. *See generally, Celli v. First Nat'l Bank (In re Layo),* 460 F.3d 289, 293 (2nd Cir. 2006).

A reasonable investigation requires furnishers to send all relevant information to a data furnisher. See *Gorman v. Wolpoff & Abramson, LLP,* 584 F. 3d at 1154. Plaintiff's complaint

alleges Defendant did not do that i.e. failed to send an ACDV. That allegation alone should be sufficient in order to deny Defendant's motion to dismiss. (See Paragraph 121 Complaint). Plaintiff specifically pled that the information on her credit report was inaccurate because the amounts that were being reported were materially different than what had been paid to her creditors under the terms of her confirmed chapter 13 plan. For example in paragraph 106 Plaintiff specifically identifies the problematic tradelines and subsequent reporting and articulated what was inaccurate about the reporting given the binding nature of the chapter 13 plan confirmation order and how the tradelines differed from the binding nature of the confirmation order and subsequent treatment of the claims.

Defendant's motion unexplainably ignores the pleadings and allegations contained within the amended complaint and assumes that simply because a bankruptcy was filed any debt that is included must be past-due or delinquent. This position does not take into account that Plaintiff's confirmed chapter 13 plan is a final judgment on what is owed and how the debt is to be treated. Defendant continues to report that Plaintiff's creditors are owed money despite allegations to the contrary.

### i. **Confirmation of a Chapter 13 Plan is Res Judicata Regarding Treatment of a Creditor's Claim**

Defendant argues that its reinvestigation was apparently reasonable because Plaintiff's chapter 13 was pending at the time the dispute was received and that because no discharge was entered the reporting of the disputed accounts was correct. This, however, misstates the applicable case law on the matter and misinterprets Plaintiff's dispute – Plaintiff does not allege anything related to a discharge in her complaint, rather she focuses on the confirmation of her chapter 13 plan and the industry standards that govern a bankruptcy filing.

Defendant's entire argument regarding the accuracy of Plaintiff's credit report rests upon a misunderstanding of bedrock bankruptcy principles. To start, Defendant naively notes that Plaintiff alleges that because of the confirmation of her bankruptcy plan her original debt obligations were to be modified, but argues that a confirmation order is not equivalent to discharge. Plaintiff agrees that the two orders are not one in the same. The effect of the

confirmation order is to "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted , or has rejected the plan." 11 U.S.C. § 1327(a). Put simply, once the confirmation order becomes a final, non-appealable judgment, the modified rights and liabilities of the parties become fixed. Although those rights and liabilities may again be adjusted by a dismissal order, a conversion order, or a discharge order, absent a subsequent order of the court, the confirmation order fixes the relationship between debtor and his or her creditors.

The confirmation order is a final judgment which fixes the amount of debt owed, the extent and manner in which those debts will be paid, and the rights of creditors to receive their share of chapter 13 plan payments. While other courts in this division have acknowledged the binding effect of confirmation, those courts give little weight or import to the impact of that order, delaying the effect of the confirmation order until the imposition of the discharge order.

Unlike the confirmation order, the discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." *In re Ellett*, 254 F.3d 1135, 1148 (9th Cir. 2001). The discharge permanently enjoins a creditor's ability to personally collect a debt against a discharged debtor. In a chapter 13 case, a discharge may be entered after the completion of payments called for under a confirmed chapter 13 plan.  At a basic level, the most tangible difference between a confirmation order and a discharge order is that a discharge order reflects that a debt is no longer owed, as where a confirmation order reflects that the terms of repayment of that debt or the amount owed have been modified. Ostensibly, Defendant's argument suggests that to the extent a debt can be modified it can only be modified upon discharge. This argument does disrespect to the confirmation order. In support of this argument Defendant cites to *Blakeney v. Experian Sols*., Inc. No. 15-CV-05544-LHK, 2016 WL 4270244, at 6 (N.D. Cal. Aug. 15,2016).

The court in *Blakeney* correctly held that a discharge and a confirmation order are not synonymous. That, however, does not change the legal effect of confirmation. To be clear, a confirmation order constitutes a binding final judgment fixing the rights and liabilities of the

parties. There is a plethora of cases that address the binding nature of the confirmation order on all creditors and hold that a confirmation order is res judicata i.e. a binding final judgment regarding the determination of claims. *See generally, Celli v. First Nat'l Bank (In re Layo),* 460 F.3d 289, 293 (2nd Cir. 2006) (holding confirmation order constitutes a final judgment)[1]. Given the myriad of case law directly on point Plaintiff avers, contrary to Defendant's argument, upon confirmation the debts he owed were in fact modified; and that modification became a final judgment with respect to amounts owed.[2] Any holding, otherwise, completely undermines the res judicata effect of the plan and ignores that the confirmation order is a final judgment.

However, *Blakeney* does not address sections 1322 and 1327 regarding the right of claims to be modified in a chapter 13 and having those modification become *a final binding judgment* upon confirmation.  Instead, *Blakeney* inexplicably expands *Mortimer v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 2993 (N.D. Cal Jan. 3, 2013).  *Mortimer* dealt specifically with the treatment of debts in a chapter 7 *post-filing, pre-discharge*.  *Mortimer* is in no way relevant whatsoever to the instant case given that Plaintiff has a judgment in her favor that is explicit in its treatment of the claims at issue.

The cases cited above make clear that once a chapter 13 plan is confirmed a creditor is bound by the terms of the plan and its claim must conform to the treatment that it is subject to

---

[1] / *United States v. Richman (In re Talbot),* 124 F.3d 1201, 1209 (10th Cir. 1997) (holding the order confirming a Chapter 13 plan represents a binding determination of the rights and liabilities of the parties ordained by the plan); *In re Fowler*, 1997 Bankr. LEXIS 2332, 14 (Bankr. E.D. Va. 1997) (holding there is little question that confirmation of a chapter 13 plan is res judicata as to the rights and liabilities of the parties to the plan); *In re Coffman*, 271 B.R. 492, 495 (Bankr. N.D. Texas 2002)(holding a confirmed Chapter 13 plan is res judicata); *Charlick v. Cmty. Choice Credit Union (In re Charlick)*, 444 B.R. 762, 765 (Bankr. E.D. Mich. 2011) (holding order of confirmation and a plan is considered res judicata as to claim determinations); *In re Sanders,* 243 B.R. 326, 331 (Bankr. N.D. Ohio 2000) (holding that an arrearage claim of $4,000 was final judgment); *In re Ramey*, 301 B.R. 534, 538 (Bankr. E.D. Ark. 2003) (holding confirmed plan is res judicata and such doctrine applies to all issues actually litigated*); In re Gibson*, 218 B.R. 900, 904 (Bankr. E.D. Ark. 1997) (holding order confirming plan fixing value of a creditor's secured claim is res judicata on that issue); *Standiferd v. United States (In re Standiferd)*, 641 F.3d 1209, 1213 (10th Cir. 2011) (noting confirmation order representing a binding determination of the rights and liabilities of the parties as ordained by the plan); *Fairshter v. Stinky Love, Inc. (In re Lacy)*, 306 Fed. Appx. 413, 421 (10th Cir. 2008) (holding creditors are limited to rights afforded by the plan, and may not take actions inconsistent with the method of payment provided for in the plan…) *Poland v. Educ. Credit Mgmt. Corp. (In re Poland)*, 382 F.3d 1185, 1188 (10th Cir. 2004) (holding order confirming a Chapter 13 plan represents a binding determination of the rights and liabilities of the parties ordained by the plan); *In re Stain*, 2013 Bankr. LEXIS 3888  at 11 (Bankr. D. Utah 2013)(holding the confirmation order is binding determination of the rights and liabilities of the parties); *In re Gordon*, 2011 Bankr. LEXIS 3848 at 9 (Bankr. D. Colo. 2011) (confirmation of plan is binding res judicata and constitutes final order). *In re Underhill*, 425 B.R. 614, 618 (Bankr. D. Utah 2010) (holding plan confirmation is res judicata and becomes binding determination of rights and liabilities of the parties); Green v. McKay, 376 S.W.3d 891, 901 (Tex. App. 2012) (plan confirmation is res judicata and becomes binding on rights and liabilities).

[2] §1300 of title 11 is titled "Adjustment of Debts"

under the chapter 13 plan. Plaintiff's chapter 13 plan provided for a 0.00% distribution to go to general unsecured creditors, meaning that any creditor that filed a claim would receive approximately 0.00% of that claim.

Defendant's argument does not address the binding nature of a chapter 13 confirmation order and does not reference any of the above cited cases. Instead, Defendant focuses on whether a bankruptcy discharge has been entered and implies that the lack of a discharge is detrimental with respect to Plaintiff's allegations in the complaint. Plaintiff's allegations against Defendant show that Defendant was provided with notice that there was a dispute regarding how certain tradelines were reporting and that Defendant failed in its reinvestigation of those disputes given the status of Plaintiff's confirmed chapter 13 bankruptcy.

    ii. **Section 1322 of the Bankruptcy Code Allows for Modification of Secured and Unsecured Debts.**

11 U.S.C. §1322(b)(2) states, in relevant portion, the following: "[A chapter 13 plan may] modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. §1322(b)(2). The Ninth Circuit held in *In re Zimmer,* 313 F. 3d. 1220, 1226 (9th Cir. 2002) that section 1322(b)(2) allow chapter 13 plans to specifically modify unsecured claims.

In describing this relationship there exists a myriad of case law that analogizes this relationship as a new contract. *See In re Than*, 215 B.R. 430 (9th Cir. B.A.P. 1997) holding that effect of confirmation is a contract between the debtor and debtor's creditors; *In re Richardson*, 192 B.R. 224 at 228 holding that confirmation constitutes a new contract; *In re Frazier*, 448 B.R. 803, 2011 Bankr. Lexis 78 (Bankr. E.D. Cal. 2011) holding that a plan constitutes a new contract and that performance under the new contract creates a right to release of a stripped junior lien ; *In re Gonzalez*, 388 B.R. 292, 2008 Bankr. Lexis 1852 (Bankr S.D. Tex. 2008) noting that a confirmed plan constitutes a new contract*; In re Padilla*, 379 B.R. 643, 2007 Bankr. Lexis 2655

(Bankr S.D. Tex. 2007), holding that a confirmed plan constitutes a new contract between the debtor and creditors[3].

Similarly, courts have also held that section 1322(b)(2) allows for modifications of unsecured claims even in cases where the chapter 13 debtor is not eligible for a discharge. *See In re Monroe,* 509 B.R. 613 (Bankr. E.D. Wisc. 20140. In the *Monroe* case the chapter 13 debtor had previously received a chapter 7 discharge and was not eligible for another bankruptcy discharge when his chapter 13 was filed. *Monroe*, 509 B.R. at 616. The *Monroe* court went on to explain "[n]othing in section 1325, nor any other provision of the Code, explicitly forbids confirmation of a chapter 13 plan that modifies the rights of a holder of an unsecured claim simply because the debtors are ineligible for a discharge. To the contrary, the Code and controlling precedent support the position that a chapter 13 plan may modify permanently the rights of holders of unsecured claims." *Monroe*, 509 B.R. at 626.

With respect to the instant case, Plaintiff's confirmed chapter 13 plan is a final and binding judgment and allows for modification of Defendant's claim. Defendant's reporting of the account as pled in paragraphs 106 of the complaint does not comport with the treatment of the claim under the terms of Plaintiff's confirmed chapter 13 plan. Both section 1322 and 1327 allow for Plaintiff to modify her debts and such modification becomes final once her chapter 13 plan is confirmed. Defendant's reporting fails to reflect the treatment under the terms of the plan.

Defendant also fails to address the relevant case law regarding treatment of a claim upon confirmation. Instead of addressing the fact that a Plaintiff is allowed to modify a claim through

---

[3] / *In re Suess*, 387 B.R. 243 at 248 noting that a Chapter 13 plan constitutes a new agreement between the debtor and each secured creditor and the new arrangement constitutes a new contract; *In re Spurgeon*, 378 B.R. 197 at 201 noting that payments are NOT required on a secured debt that is surrendered; *In re McPherson*, 350 B.R. at 46, holding a chapter 13 plan constitutes a new agreement between debtor and each secured creditor and a debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor; *In re Van Bodegom Smith*, 383 B.R. 441 at 450 noting a plethora of case law that suggests Chapter 13 confirmation creates a new contract; *In re Nicholson*, 70 B.R. 398 at 400 noting that 11 U.S.C. 1327(a) creates new agreement; In *In re Luedtke*, 2008 Bankr. Lexis 2118, holding that reporting a debt under the original contract is inaccurate given the amount and terms of repayment were changed; *In re Singh*, 457 B.R. 7490, holding that 11 U.S.C. 1327(a) binding nature refers to the terms of the plan and constitutes a new contract; *In re Pruitt*, 2011 Bankr. Lexis 5661, holding that the provisions of a Chapter 13 plan constitutes a new contract to be enforced between the parties; *In re Lopez*, 2011 Bankr. Lexis 5637, holding that provisions of a plan are a new contract to be enforced by the parties; *Stanley v. OneWest Bank*, holding that provisions of a plan are a new contract to be enforced between the parties.

PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX, INC.'S MOTION TO DISMISS COMPLAINT
PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE - 12

a chapter 13 and the confirmation order binds creditors to the terms of the Plan Defendant again focuses on whether a discharge has been entered and argues that because there is not particular language in the confirmation order it does not constitute a judgment. This rationale ignores the cases cited above in support of both section 1322 and 1327. Accordingly, Defendant's argument should be rejected.

Thus, putting together the above cases addressing both 1322 and 1327 leads to the well founded and generally accepted bankruptcy legal principles 1) plan confirmation is essentially a new contract and 2) that the new contract is binding under 1327 and there should be little difficulty reaching the conclusion that reporting debts in a manner that suggests the status quo remains unchanged remains facially inaccurate or at the very least misleading.

To the extent a Court may or may not have concerns with Debtors not successfully completing their plan as a reason not to update the reporting, such an argument rests mainly on policy and is in fact not supported by the mountain of case law contained herein. Such an argument also ignores the inherent nature of credit reporting. Specifically, credit reporting in general looks at the present condition of an account and its payment history to determine or predict the likelihood of payment default on a new loan. The likelihood of default is characterized or contemplated in a consumer's FICO Score. The "what if" argument e.g. what if a plan is dismissed or converted, is already contemplated in the score vis-à-vis the CII D. Indeed, the "what if" represents a dangerous slippery slope where the same logic could be used to deny any balance or past due balance from being updated. To wit – its not difficult to imagine a scenario where a consumer becomes delinquent on a debt, the present condition of the account changes in some manner e.g. payment and the data furnisher refuses to update the account because "what if" the consumer becomes delinquent again. The point being that the "what if" is exactly what a FICO score attempts to illustrate.

FICO exists to help lenders deal with "what if." This is why Plaintiff has gone to great lengths to illustrate how a score is calculated. The CII D specifically instructs or tells a potential creditor that a certain account has been included but not discharged in bankruptcy. Consequently, a credit report that reflected the CII D with a reduced balance and no past due balance would be

the MOST accurate depiction of the account's current condition. Any lender would know that the account has NOT been discharged so the balance and past due balance could change. To that end, if a debtor does have his or her case dismissed the reporting can return to its status quo and Debtor's credit score will no doubt plummet. This, however, does not change the fact that until dismissal or conversion a new contract exists and reporting a debt in a manner inconsistent with that contract should easily be considered inaccurate.

Regarding both the *Biggs* and *Adkins* decisions were decided by the same Court using essentially identical legal analysis Plaintiff finds it most appropriate to look at the two cases simultaneously. In support of its opinion in *Adkins* the court first cites to its opinion in *Biggs* where the Court held

> …the mere filing of a voluntary bankruptcy petition does not erase or invalidate debts, nor does the act excuse the debtor from making timely payments on his or her outstanding accounts. If anything, the filing of a bankruptcy petition only imposes a limit on a creditor's ability to collect on a debt. But the debt and its delinquent status still exist, and it is not inaccurate or misleading to report that information to a CRA.

Biggs, 2016 U.S. Dist Lexis 130742 at 6.

Respectfully, while the above statement has some merit in the Chapter 7 context, it remains profoundly wrong in the Chapter 13 context. Specifically:

1. Plaintiff has never made the argument that plan confirmation erases or invalidates debt. IN fact Plaintiff believes it appropriate to report whatever balance is owed under the plan. Still, to report an inaccurate amount owed or past due balance post confirmation completely ignores the *vast majority of case law* suggesting that plan confirmation does impact amounts owed and their repayment.
2. Confirmation does in fact excuse timely payments under the original terms because confirmation modifies the amounts owed and the manner in which a debt is to be repaid. See 11 U.S.C. §1322(B)(2) and 11 U.S.C. §1327.
3. The filing of a Chapter 13 petition and confirmation of a plan does much more than simply limit a creditor's ability to collect a debt. This gross over simplification of Title Eleven simply ignores that Debtors can modify amounts owed and the repayment of both unsecured AND secured debts through the Chapter 13 process. *See In re Luedtke*, 2008 Bankr. Lexis 2118, where the court held that a car loan amount was in fact reduced

through confirmation (NOT DISCHARGE) and that reporting the account past due was clearly inaccurate AND ran afoul of the confirmation order.

Perhaps most frustrating when looking at *Adkins* and *Biggs* is the Court's acknowledgment that 11 U.S.C. 1327 does in fact bind debtor and creditor. *Adkins* at 7 . The Court, however, then clumsily pivots from the legal impact of the binding nature of 1327 to suggest that confirmation and discharge are not synonymous. *Adkins* at 7-8 . To be clear, Plaintiff agrees with the Court's legal conclusion that confirmation and discharge are not synonymous. Plaintiff, however, avers that the Court in *Adkins* never actually analyses the effect of 1327 except to suggest it's not a discharge. Plaintiff believes this is in large part because no analysis of 11 U.S.C. 1322(B)(2) exists in *Adkins* or *Biggs*.[4]  After all, if the Court were unaware that Debtors could in fact modify debts under 1322(B)(2) what purpose would 1327 serve? The Court actually answers this question in *Adkins* when the Court states

> Plaintiff argues without citation to authority[5] that approval of a reorganization plan in `bankruptcy absolves Plaintiff from any legal requirement to pay on the debts separate from the treatment under the terms of the Chapter 13 plan. Though this statement may be in reference to the binding provision of §1327(a), speaking in terms of absolution is an unfitting accentuation of the statute's effect. Again, while §1327(a) imparts restraint on creditor's ability to collect outside of the plan's terms, it does not absolve or erase either the debt or the fact that payments are owing or past due.

Thus, because the Court in *Biggs* and *Adkins* was simply unaware that 11 U.S.C. §1322(B)(2) existed the court had to give some meaning to the binding effect of 1327. While the Court is correct that the binding nature prevents "collection" outside of the terms of plan, such enforcement of collection would normally be brought under 11 U.S.C. §362 as a stay violation. The binding nature of 1327 therefore has less to do with preventing collection activity and MORE to do with binding the amounts owed and the terms of repayment on that amount.

Any reliance on *Blakeney* should be disregarded considering that opinion does no analysis of 11 U.S.C. §§1322 or 1327.  Instead, the court primarily relies on *Mortimer* and its progeny for the proposition that if a discharge order has not been entered than a creditor can essentially report an account past due, delinquent, and need not mention anything about a

---

[4] 11 U.S.C. §1322(B)(2) was not briefed in those decisions which would explain its absence.
[5] That missing authority exists in this response.

PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE - 15

bankruptcy being filed no matter what chapter has been filed until the discharge order has been entered. *Blakeney,* 2016 U.S. Dist Lexis 107916 at 16-17. If this Court follows *Blakeney,* any consumer who files Chapter 13 and attempts to repay at least some debt (like Plaintiff here) that consumer will be punished every month for 60 months while they are in bankruptcy simply because they chose to repay their debts rather than discharging them quickly in Chapter 7. This is more than just a policy argument. The aforementioned case law contained herein makes clear that amounts owed and the terms of repayment are modified through confirmation and that modification is a binding final judgment. Thus, *Blakeney* essentially unhinges congress's specific intent under Chapter 13 to allow debtor's to modify their debts while simultaneously undermining congress's intent in ensuring consumers' credit reports are free from inaccuracies. This is totally unacceptable and should be given no weight

### iii. **Accuracy**

Given that a confirmation order constitutes a final judgment fixing the rights and liabilities of the parties contrary to Equifax's position Plaintiff can and has shown the first element of a FCRA claim. Specifically that an inaccuracy exists.

Per credit reporting industry standards as alleged in the complaint, once Plaintiff's plan was confirmed the balances of the accounts identified in paragraphs 106 should have been updated to reflect the final judgment. None of the aforementioned reporting comports with industry guidelines and none of the reporting respects the bankruptcy courts final judgment.

In its defense Defendant cites to *Blakeney*, *Mortimer*, and its progeny that delinquencies can be reported post petition pre-discharge. To start, *Blakeney* remains wholly inconsistent with well founded bankruptcy principles and does not address all of the cited case law contained herein.[6] Put another way, if creditors can continue reporting past due balances for the entire duration of a consumer's chapter 13 plan what "debt adjustment" or final judgment has occurred? Credit reporting industry standards (Metro 2) recognize this principle. Plaintiff has properly alleged post confirmation industry standards dictate that furnishers should stop

---

[6] *Blakeney* ignores the case law because *Blakeney* does little bankruptcy analysis other than to state the obvious that a confirmation order is not the same thing as a discharge order. From this statement *Blakeney* then jumps to the conclusion that debts are not modified by confirmation orders. For the reasons stated herein that is simply wrong as a matter of law.

reporting an account past due. It can also not be overstated that Plaintiff has alleged that Defendant has approved a CDIA class that instructs data furnishers on how to report debts included in bankruptcy.

At its core *Mortimer* remains founded on the idea that the bankruptcy code is silent with respect to reporting overdue payments post petition but pre discharge. "while it might be good policy in light of the goals….nothing in the bankruptcy code prevents." *Mortimer, at \*14-16.*. Plaintiff argues that this section of *Mortimer* does not comport with the provisions of 11 U.S.C §362(B)(2)(E), which specifically discuss reporting overdue payments.  Under 11 U.S.C. §362(B)(2)(E) the only overdue reporting specifically allowed by the bankruptcy code surrounds over due domestic support obligations. .

Defendant's last argument surrounds the notion that it can not possibly be in a position to resolve legal/contractual disputes. In support of this argument Defendant cites to *Carvalho* and *DeAndrade v. TransUnion, LLC*, 523 F.3d 61 (1st Cir. 2008).  This argument also ignores the impact of a chapter 13 confirmation order and exhibit a misunderstanding of the confirmation process. Specifically, the cases cited by Defendant are not applicable given that adjudication regarding the parties' rights and liabilities in those cases had not occurred[7]. Here, however, the confirmation order is exactly that, a final judgment. Put another way, pre confirmation Plaintiff proposed to pay her creditors an amount that would ultimately pay out 0.00% of its claim. At this time Defendant's argument would be relevant. After all, creditors are allowed to object to plan confirmation and creditors pre confirmation simply do not know what their rights and liabilities may or may not be.  Post confirmation, however, a judgment has been rendered that fixes the parties rights and liabilities. Thus, even though Defendant remains a third party it does not need to place itself in the place of a tribunal and resolve legal disputes because those disputes have already been resolved via confirmation.

All of the aforementioned becomes slightly academic given that industry guidelines articulate exactly how data should be reported pre and post confirmation. Given that Defendant sponsors a class instructed by the CDIA on this very topic it remains disingenuous for Defendant

---

[7] / *DeAndrade* dealt specifically with principles surrounding the formation and ratification of a contract/mortgage.

PLAINTIFF'S OPPOSITION TO DEFENDANT EQUIFAX, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE - 17

to argue that it simply can not know what should or should not be reported. If that's true why does Defendant support a class that purports to teach the very topic Defendant continues to argue it cannot possibly know?

          iv.    **Defendant Failed to Review and Investigate Plaintiff's Chapter 13 Plan And Treatment of Creditors**

Contrary to Defendant's position that the allegations in the complaint do not "accord with general bankruptcy principles" Plaintiff maintains that Defendant is still unnecessarily focusing on whether a discharge has been entered, and is having that focus distract it from the effect of the confirmation order and payments that have been made under Plaintiff's chapter 13 plan. Defendant does not want to address that Plaintiff's Complaint addresses the industry standard for credit reporting and that Defendant did not follow those standards when it received Plaintiff's dispute letter, and further, that Defendant did not comply with its duties under section 1681i of the FCRA.

          a.    **Defendant Violated the FCRA When It Failed To Follow The Metro 2 Formatting Because It Is The Industry Standard**

Because Metro 2 is the industry standard format, "one could certainly deem [that] unexplained deviation from this standard objectively unreasonable" and thus consider it a factor in evaluating FCRA compliance or noncompliance. *Dreher v. Experian Info. Solutions, Inc*. 2013 WL 2389878 (E.D. Va. May 30, 2013). The Metro 2 format is not one that can be selectively followed or ignored regarding the accuracy of information that is provided. *Cassara v. DAC Serv., Inc.*, 276 F. 3d 1210 (10th Cir. 2002).

In *Nissou-Rabban v. Capital One Bank (USA), N.A.,* 2016 U.S. Dist. LEXIS 81373 the court, when ruling on a motion to dismiss, found that the amended complaint at issue, which pleading addressed violations of the Metro 2 reporting standard, was enough survive the pleading standard under F.R.C.P. 12(b)(6).

Plaintiff, in her complaint, identifies the industry standard and the requirements under that standard when reporting a bankruptcy. Plaintiff outlines the problematic portions of her credit report and identifies why the reporting is incorrect and inaccurate.

         v.  **Plaintiff Is Not Judicially Estopped From Bringing This Action**

Defendant argues that Plaintiff is barred from bringing this lawsuit because it was not disclosed when he first filed his chapter 13 petition. Defendant apparently believes that a cause of action that did not exist at the time the bankruptcy petition was filed should have been listed.

While 11 U.S.C. §541 defines property of the estate at the time of filing, 11 U.S.C. §1306(a) expands property of the estate to include property the "debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of this title…" By its plain language section 1306(a) does in fact make Plaintiff's lawsuit against Defendant property of the estate. Plaintiff does not argue otherwise. Defendant, however, improperly assumes a nexus between property acquired under section 1306(a) and a debtors duty to amend his or her schedules to list such an asset.

While section 1306(a) expands property of the estate to include post petition assets, "there is no requirement that property coming into the estate only due to the operation of section 1306(a) be listed in the schedules; obviously such a requirement would be unworkable, since the debtor's schedules would have to be amended to reflect each paycheck or acquisition of property, as well as every expenditure." 8-1306 Collier on Bankruptcy P 1306.01. This sentiment was confirmed by the 11th Circuit court of appeals in *Waldron v. Brown*. The *Waldron* court stated "[w]e do not hold that a debtor has a free-standing duty to disclose the acquisition of any property interest after the confirmation of his plan under Chapter 13.   Neither the Bankruptcy Code nor the Bankruptcy Rules mention such a duty…" *In re Waldron* 536 F. 3d 1239, 1249 (11th Cir. 2008).  While *Waldron* did indicate that a court can require disclosure under Bankruptcy Rule 1009 there was no bright line rule that would prevent Plaintiff from pursuing the causes of action in the instant complaint.

Further, in *Momoh v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist LEXIS 86276 (N.D. Cal, July 1, 2016), the District Court held that a plaintiff was not judicially estopped from bringing a claim that was not listed in the chapter 13 bankruptcy schedules after plan confirmation.

The *Momoh* court stated:

> The Court has little trouble concluding that the fact that Plaintiff did not disclose these claims before the [date of plan confirmation] does not support application of judicial estoppel. The reason is simple: no facts, alleged or otherwise judicially noticeable, suggest that Plaintiff knew about these potential claims before the bankruptcy court confirmed her plan. To the contrary, taking Plaintiff's allegations as true, it would have been impossible for Plaintiff to know about her claims at that time.

*Momoh v. Wells Fargo Bank, N.A.* 2016 U.S. Dist. LEXIS 86276 *9-10.

Here, there was no possible way for Plaintiff to know that her creditors would report accounts included in her bankruptcy inaccurately on her credit report at the time of the confirmation of her chapter 13 plan. Plaintiff's claims arose well after the confirmation of her plan.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this court deny Defendant's motion to dismiss under F.R.C.P. 12(b)(6) on the grounds that the complaint is specific as to which allegations and causes of action apply to Defendant and because the complaint states claims upon which relief can be granted. Alternatively, if the court grants Defendant's motion to dismiss, Plaintiff requests that the dismissal be without prejudice and that Plaintiff is allowed leave to file an amended complaint.

Dated:   January 4, 2017

**Sagaria Law, P.C.**
/s/ *Elliot Gale*
Elliot Gale
Attorneys for Plaintiff