**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE MINNER,<br><br>            Plaintiff,<br><br>      v.<br><br>EQUIFAX, INC., et al.,<br><br>            Defendants. | Case Nos.  16-cv-05690-JSW<br>16-cv-05692-JSW<br>16-cv-05700-JSW<br>16-cv-05705-JSW<br>16-cv-05713-JSW<br>16-cv-06349-JSW<br>16-cv-06350-JSW<br>16-cv-06365-JSW<br>16-cv-06381-JSW |
| JOSE ROBLES,<br><br>            Plaintiff,<br><br>      v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>            Defendants. | **ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS AND SETTING CASE MANAGEMENT CONFERENCES**<br><br>16-5690 - Dkt. Nos. 16, 20 |
| GREGORY SIMS,<br><br>            Plaintiff,<br><br>      v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>            Defendants. | 16-5692 – Dkt. No. 31<br><br>16-5700 – Dkt. Nos. 37, 48<br><br>16-5705 – Dkt. Nos. 36, 52<br><br>16-5713 – Dkt. Nos. 16, 26<br><br>16-6349 – Dkt. No. 43<br><br>16-6350 – Dkt. No. 16, 20 |
| RAMON ROSALES,<br><br>            Plaintiff,<br><br>      v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>            Defendants. | 16-6365 – Dkt. No. 16<br><br>16-6381 – Dkt. No. 24 |

United States District Court
Northern District of California

1

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SUSANA DEGUZMAN,

    Plaintiff,

  v.

EXPERIAN INFORMATION SOLUTIONS,
INC., et al.,

    Defendants.

MADELINE RICE,

    Plaintiff,

  v.

EXPERIAN INFORMATION SOLUTIONS,
INC., et al.,

    Defendants.

MEGAN ROSTRON,

    Plaintiff,

  v.

EXPERIAN INFORMATION SOLUTIONS,
INC., et al.,

    Defendants.

BRADLEY JAROSZ,

    Plaintiff,

  v.

EQUIFAX, INC., et al.,

    Defendants.

MARIA RODRIGUEZ,

    Plaintiff,

  v.

EXPERIAN INFORMATION SOLUTIONS,
INC., et al.,

    Defendants.

These cases are among hundreds of cases filed in this District against credit reporting agencies ("CRAs"), like Equifax, Inc. ("Equifax") and Experian Information Solutions, Inc. ("Experian") (collectively the "CRA Defendants"), and against entities who furnish information to the CRA Defendants, such as Wells Fargo Bank, N.A. ("Wells Fargo"), The Golden 1 Credit Union ("Golden 1"), and TD Bank USA, N.A. ("TD Bank") (collectively the "Furnisher Defendants").

Now before the Court for consideration are motions to dismiss and a motion for judgment on the pleadings, filed by the CRA Defendants and by the Furnisher Defendants. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and has determined the motions can be resolved without oral argument.[1] *See* N.D. Civ. L.R. 7-1(b). The Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, the motions, and it GRANTS each Plaintiff leave to amend on the terms set forth in this Order.

## BACKGROUND

Plaintiffs in these cases filed for Chapter 13 bankruptcy protection and challenge the manner in which debts have been reported after their reorganization plans were confirmed. With the exception of Ms. Rice, Plaintiffs have not been discharged from bankruptcy.[2] Each Plaintiff devotes a large portion of the Complaint to general allegations about credit scores, the way in which credit disputes are communicated between CRAs and furnishers, and guidelines promulgated by the Consumer Data Industry Association (the "Metro 2 guidelines").[3] Plaintiffs allege the Metro 2 guidelines are the "industry standard for accurate credit reporting," including

---

[1]     Plaintiff Madeline Rice ("Ms. Rice") did not oppose Experian's motion to dismiss. (*See* 16-cv-6349 *Rice* Dkt. Nos. 52, 54.) As set forth in the Court's Order Admonishing Counsel, the Court will address the merits of Experian's arguments. (*Id.*, Dkt. No. 56.)

[2]     According to representations in a joint case management statement, Ms. Rice was discharged from bankruptcy on November 29, 2016. (16-cv-6349, *Rice* Dkt. No. 50, Joint Case Management Conference Statement at 3:16-13.)

[3]     With the exception of facts that are particular to a given Plaintiff, the allegations set forth in the Complaints are, for the most part, identical. The Court will address any variations as needed in the remainder of this Order.

United States District Court
Northern District of California

the manner in which bankruptcy proceedings are to be reported pre- and post-confirmation. (Minner Compl. ¶¶ 20-86; Robles Compl. ¶¶ 20-86; Sims Compl. ¶¶ 20-86; Rosales Compl. ¶¶ 20-86; De Guzman Compl. ¶¶ 20-87; Rice Compl. ¶¶ 20-86; Rostron Compl. ¶¶ 20-86; Jarosz Compl. ¶¶ 20-86; Rodriguez Compl. ¶¶ 20-86.)

Ms. Minner, Mr. Robles, Mr. Sims, and Ms. Rostron allege that, before they filed for bankruptcy, they pulled credit reports "to ensure all outstanding debt was properly listed and scheduled in" their petitions. They set forth the date on which they filed for bankruptcy and state that the purpose of the filing was "to reorganize and repair [their] credit worthiness and FICO score[s]." (Minner Compl. ¶¶ 87, 93; Robles Compl. ¶¶ 87, 93; Sims Compl. ¶¶ 87, 93; Rostron Compl. ¶¶ 87, 93.) Mr. Rosales, Ms. De Guzman, Ms. Rice, Mr. Jarosz, and Ms. Rodriguez allege the date on which they filed for bankruptcy and state that the purpose was "to reorganize and repair [their] credit worthiness and FICO score[s]." (Rosales Compl. ¶ 87; De Guzman Compl. ¶ 88; Rice Compl. ¶ 87; Jarosz Compl. ¶ 87; Rodriguez Compl. ¶ 87.)[4] Plaintiffs then set forth the dates on which their bankruptcy plans were confirmed, set forth general terms of their bankruptcy plan, and state that, after confirmation, they "ordered a three bureau credit report from [Experian] to ensure proper reporting by [their] Creditors." (Minner Compl. ¶¶ 96-98; Robles Compl. ¶¶ 96-98; Sims Compl. ¶¶ 96-98; Rosales Compl. ¶¶ 90-92; De Guzman Compl. ¶¶ 91-93; Rice Compl. ¶¶ 93-94, 105; Rostron Compl. ¶¶ 99-100, 111; Jarosz Compl. ¶¶ 93-94, 105; Rodriguez Compl. ¶¶ 93-94, 105.)

According to the Plaintiffs, after they ordered these reports, they noticed that different "tradelines" reported "inaccurate, misleading, or incomplete information that did not comport with credit reporting industry standards," including one or more of the following: late payments, past due balances, inaccurate balances, in collections, charged off, or failed to register that a Plaintiff was making payments on the account through a bankruptcy plan. The Court shall refer to these

---

[4]       Ms. Rice's Complaint includes allegations regarding certain aspects of bankruptcy proceedings that are not included, for example, in Ms. De Guzman's Complaint. (*Compare* Rice Compl. ¶¶ 87-116 *with* De Guzman Compl. ¶¶ 88-103.) For the reasons set forth in Section E.2, the Court finds these additional allegations do not alter the Court's conclusion that Plaintiffs fail to state claims against the Defendants based on their primary theory of liability.

reports as "the First Reports."  Plaintiffs provide no further detail about the alleged inaccuracies contained in the First Reports.  For example, they do not allege which of the three CRAs reported the allegedly inaccurate information, what debts were at issue, or the nature of the inaccurate information, *e.g.,* whether a Furnisher Defendant reported inaccurate terms or whether the alleged inaccuracy was that Furnisher Defendant reported the debt as charged off.  (*See* Minner Compl. ¶ 99; Robles Compl. ¶ 99; Sims Compl. ¶ 99; Rosales Compl. ¶ 93; De Guzman Compl. ¶ 94; Rice Compl. ¶ 106; Rostron Compl. ¶ 112; Jarosz Compl. ¶ 106; Rodriguez Compl. ¶ 106.)

Plaintiffs then allege they sent dispute letters to the CRA Defendants and disputed the inaccurate tradelines.  Plaintiffs also allege, on information and belief, the CRA Defendants received their dispute letters and allege, again on information and belief, the CRA Defendants forwarded the letters to each Furnisher Defendant.  Plaintiffs also allege they ordered a second credit report from Experian "to ensure [their] accounts had been updated."  The Court shall refer to these reports as "the Second Reports."  Most Plaintiffs allege they were "not pleased to notice that some of the inaccuracies had not been updated or removed."  (Minner Compl. ¶¶ 102-104; Robles Compl. ¶¶ 102-104; Sims Compl. ¶¶ 102-104; Rosales Compl. ¶¶ 96-98; De Guzman Compl. ¶¶ 97-99; Rice Compl. ¶¶ 109-111; Rostron Compl. ¶¶ 115-117; Jarosz Compl. ¶¶ 109-110 (alleges only that ordered second report to ensure accounts had been updated); Rodriguez Compl. ¶¶ 109-110 (same).)  Some Plaintiffs also include facts about how their credit scores differed from the First Reports, although the level of detail varies by Plaintiff.  (Minner Compl. ¶¶ 90-91, 104-105; Robles Compl. ¶¶ 90-91, 104-105; Sims Compl. ¶¶ 90-91, 104-105; Rosales Compl. ¶ 98; De Guzman Compl. ¶ 99; Rice Compl. ¶ 111; Rostron Compl. ¶ 117-118.)  Ms. Rodriguez does not include any allegations regarding her credit score.  (Rodriguez Compl. ¶¶ 87-114.)

Each Plaintiff alleges the Second Reports show the Furnisher Defendants, some of whom have been dismissed, reported their accounts in collections, charged off, and or with a balance that did not comport with the terms of Plaintiffs' bankruptcy plans.  They also allege the Furnisher Defendants did not follow the Metro 2 standards.  None of the Plaintiffs allege they filed a dispute after they reviewed the Second Reports.  (*See generally* Minner Compl. ¶ 106; Robles Compl.

5

¶¶ 106-108; Sims Compl. ¶¶ 106-111; Rosales Compl. ¶¶ 99-101; De Guzman Compl. ¶¶ 100-101; Rice Compl. ¶¶ 112-114; Rostron Compl. ¶ 119; Jarosz Compl. ¶¶ 111-114; Rodriguez Compl. ¶¶ 111-112.)

Plaintiffs allege that the CRA Defendants violated the Fair Credit Reporting Act ("FCRA").  Ms. Minner, Mr. Sims, Mr. Rosales, Ms. Corrales, and Ms. Rostron allege Wells Fargo (Minner and Rosales), Golden 1 (Sims), and TD Bank (Rostron) violated the FCRA and violated California Civil Code section 1785.25(a), a provision of California's Consumer Credit Reporting Agencies Act (hereinafter the "CCRAA claims").

## ANALYSIS

**A.    Applicable Legal Standards.**

    **1.    Motions to Dismiss for Insufficient Service of Insufficient Service of Process.**

Experian moves to dismiss Ms. De Guzman's Complaint pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(2), and 12(b)(5) on the basis that she did not serve it properly. Pursuant to Rules 12(b)(4) and 12(b)(5), a district court may dismiss an action based on insufficient process or insufficient service of process.  A plaintiff bears the burden of demonstrating that service is proper.  *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). A summons must be issued for each defendant in a case.  *See* Fed. R. Civ. P. 4(a)(1)(b); *see also* Fed. R. Civ. P. 4(b) ("A summons--or a copy of a summons that is addressed to multiple defendants--must be issued for each defendant to be served"); *Verde v. Media Corp. v. Levi*, No. 14-cv-00891-YGR, 2014 WL 3372081, at *2 (N.D. Cal. July 9, 2014).

Under Rule 4(m), a plaintiff must serve a defendant within 90 days of filing the complaint. If a plaintiff fails to serve a defendant within that time period, a court may dismiss the case without prejudice.  In order to obtain jurisdiction over a defendant, that defendant must be properly served.  *SEC v. Ross,* 504 F.3d 1130, 113 (9th Cir. 2007).  "[N]either actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4."  *Id.* at 1140.

    **2.    Motions to Dismiss for Lack of Standing.**

Wells Fargo moves to dismiss Ms. Minner's claims against it for lack of standing.  A

United States District Court
Northern District of California

1   motion to dismiss for lack of standing is evaluated under Federal Rule of Civil Procedure 12(b)(1).

2   *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *White v. Lee*, 227 F.3d 1214,

3   1242 (9th Cir. 2000).  Where, as here, a defendant makes a facial attack on jurisdiction, factual

4   allegations of the complaint are taken as true.  *Federation of African Am. Contractors v. City of*

5   *Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S.

6   555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the

7   defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general

8   allegations embrace those specific facts that are necessary to support the claim.") (internal citation

9   and quotations omitted).  The plaintiff is then entitled to have those facts construed in the light

10  most favorable to him or her.  *Federation of African Am. Contractors*, 96 F.3d at 1207.

11      **3.      Motions to Dismiss for Failure to State a Claim.**

12      All Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the

13  basis that Plaintiffs fail to state a claim.  On a motion to dismiss under Rule 12(b)(6), the Court's

14  "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in

15  the light most favorable to the plaintiff."  *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th

16  Cir. 2008).  Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2),

17  "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

18  labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do."

19  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265,

20  286 (1986)).

21      Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

22  must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A

23  claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw

24  the reasonable inference that the Defendant is liable for the misconduct alleged."  *Ashcroft v.*

25  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the allegations are

26  insufficient to state a claim, a court should grant leave to amend, unless amendment would be

27  futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss &*

28  *Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

United States District Court
Northern District of California

7

### 4.    Motions for Judgment on the Pleadings.

Wells Fargo moves for judgment on the pleadings in the *Rosales* case, pursuant to Federal Rule of Civil Procedure 12(c).  A motion for judgment on the pleadings challenges the legal sufficiency of the claims asserted in the complaint.  A Rule 12(c) motion is "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal 2008).  "For purposes of the motion, the allegations of the non-moving party must be accepted as true . . .  Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  However, "[t]he court need not … accept as true allegations that contradict matters properly subject to judicial notice[.]"  *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

### B.    Ms. De Guzman Fails to Show She Served Experian.

Ms. De Guzman did not respond to Experian's argument that her case should be dismissed based on lack of service.  The record shows that Experian is not listed in the summons that was issued in this case.  (16-cv-5713, *De Guzman* Dkt. No. 5.)  Ms. De Guzman has not filed a proof of service on Experian, and she has not asked for an extension of time to serve Experian.  *See, e.g.*, Fed. R. Civ. P. 4(m) ("[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.").  Accordingly, the Court GRANTS Experian's motion to dismiss Ms. De Guzman's Complaint for failure to effect service.

Experian also challenges the merits of Ms. De Guzman's claims under the FCRA, and its arguments are nearly identical to the arguments it raises in support of its motions to dismiss filed in the other cases covered by this Order.  Therefore, the Court's ruling in the following sections would apply equally to Ms. De Guzman's claims against Experian, and it will grant her leave to amend.  If Ms. De Guzman chooses to file an amended complaint, she shall demonstrate she has served any defendant named in that complaint.

**C.     Ms. Minner Alleges Facts to Show She Has Article III Standing.**

In order for Ms. Minner to establish Article III standing, she must show she: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Wells Fargo argues Ms. Minner fails to allege injury-in-fact, because she has not alleged any actual damages.[5] "The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). The fact that a plaintiff may allege facts that, at the pleading stage, satisfy the requirements for Article III standing does not mean these same facts would be sufficient to state a claim. *See Doe v. Chao*, 540 U.S. 614, 624-25 (2004); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 n.5 (N.D. Cal. 2011) (quoting *Doe*, 540 U.S. at 624-25).

Injury-in-fact consists of "a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S.Ct. at 1548. "Article III standing requires a concrete injury even in the context of a statutory violation," but the term "concrete" in that context is "not … necessarily synonymous with 'tangible.'" *Id.* at 1549. In order to determine whether an "intangible harm constitutes injury in fact" for purposes of Article III standing, both history and the judgment of Congress play important roles." *Id.*; *see also Lugo v. Experian Information Solutions, Inc.*, No. 16-cv-6467-EJD, 2017 WL 2214641, at *3 (N.D. Cal. May 19, 2017); *Keller v. Experian Information Solutions, Inc.*, No. 16-cv-4643-LHK, 2017 WL 130285, at *4 (N.D. Cal. Jan. 13, 2017).

---

[5]     The Court addresses whether Ms. Minner alleges facts to support a claim for damages in Section E.3, *infra*.

United States District Court
Northern District of California

1    Pursuant to *Spokeo*, a court may consider "whether an alleged intangible harm has a close

2    relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in

3    English or American courts."  *Spokeo,* 136 S.Ct. at 1549.  A court also may consider the judgment

4    of Congress, *i.e.* whether Congress elevated "'to the status of legally cognizable injuries concrete,

5    de facto injuries that were previously inadequate in law.'"  *Id.* (quoting *Lujan*, 504 U.S. at 578).  A

6    plaintiff will not, however, automatically satisfy the injury-in-fact requirement by asserting a

7    violation of a statutory right.  For example, "a bare procedural violation, divorced from any real

8    harm," will not satisfy Article III's injury-in-fact requirement.  *Id.*

9    According to Wells Fargo, Ms. Minner has done no more than allege a "bare procedural

10   violation" of the FCRA, which is not sufficient to establish standing under *Spokeo*.  The Court

11   finds this argument unpersuasive.  Congress enacted the FCRA, in part, "to curb the dissemination

12   of false information."  *Spokeo,* 136 S.Ct. at 1550.  Ms. Minner's allegations in this case are

13   premised on allegations that she notified Wells Fargo, through a CRA, that information it had

14   reported was inaccurate.  Ms. Minner also alleges Wells Fargo failed to investigate that

15   information.  The Court finds that Ms. Minner has alleged facts that amount to more than a bare

16   procedural violation of the FCRA and, thus, has alleged injury-in-fact.  *See, e.g., Lugo,* 2017 WL

17   2214641, at *3 (citing *Syed v. M-I, LLC,* 853 F.3d 492, 499 (9th Cir. 2017)); *Keller*, 2017 WL

18   130285, at *4.

19   Accordingly, the Court DENIES, IN PART, Wells Fargo's motion to dismiss.

20   **D.**    **Ms.  Minner and Mr. Rosales' Claims Are Not Barred by Judicial Estoppel.**

21   Wells Fargo also moves to dismiss Ms. Minner's claims, on the basis that the claims are

22   barred by judicial estoppel.  Wells Fargo raises the same argument in support of its motion for

23   judgment on the pleadings on Mr. Rosales' claims.  According to Wells Fargo, because these

24   Plaintiffs failed to include their claims in these actions on their bankruptcy schedules and failed to

25   amend their schedules after these cases were filed, their claims are barred.[6]

26   _____

27   [6]    Wells Fargo asks the Court to take judicial notice of documents from Ms. Minner's and
     Mr. Rosales' bankruptcy proceedings.  (16-cv-5690, *Minner*  Dkt. No. 17; 16-cv-5705, *Rosales*

28   Dkt. No. 53.)  The Court grants those requests, but it does not take judicial notice of any disputed
     facts in those documents.  Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90

United States District Court
Northern District of California

1       Judicial estoppel is an equitable doctrine designed to "protect the integrity of the judicial

2 process by prohibiting parties from deliberately changing positions according to the exigencies of

3 the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  The *New Hampshire* court set

4 forth several factors that a court may consider in determining whether to apply the doctrine: (1) is

5 "a party's later position … clearly inconsistent with its earlier position"; (2) has the party

6 "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance

7 of an inconsistent position in a later proceeding would create the perception that either the first or

8 the second court was misled[;]" and (3) "whether the party seeking to assert an inconsistent

9 position would derive an unfair advantage or impose an unfair detriment on the opposing party if

10 not estopped." *Id.* at 750-51.

11       "In the bankruptcy context, the federal courts have developed a basic default rule: If a

12 plaintiff-debtor omits a pending (or soon-to-be filed) lawsuit from the bankruptcy schedules and

13 obtains a discharge (or plan confirmation) judicial estoppel bars the action." *Ah Quin v. County of*

14 *Kauai Dep't of Transportation*, 733 F.3d 267, 271 (9th Cir. 2013); *accord Hamilton v. State Farm*

15 *Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).  "Judicial estoppel will be imposed when the

16 debtor has knowledge of enough facts to know that a potential cause of action exists during the

17 pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify

18 the cause of action as a contingent asset." *Hamilton*, 270 F.3d at 784.

19       Ms. Minner and Mr. Rosales do not dispute that they did not include these claims in their

20 bankruptcy schedules or their plans.  They also concede that their lawsuits would be property of

21 their bankruptcy estates.  They argue that they could not have disclosed these claims when they

22 filed their schedules or their plans, because they did not know of the claims until after their plans

23 had been confirmed.  The Court does not find that argument dispositive, because Plaintiffs have a

24 continuing duty to amend their schedules until discharge.  *See, e.g., Hamilton*, 270 F.3d at 785;

25 Fed. R. Bankr. P. 1007(h).  However, there is no indication in the record that the bankruptcy

26 courts have taken any formal action since Ms. Minner's and Mr. Rosales' bankruptcy plans were

27

28

(9th Cir. 2001).

United States District Court
Northern District of California

confirmed.  Thus, there is nothing in the record to suggest that the bankruptcy courts relied on Ms. Minner's and Mr. Rosales' omission of these claims.  "Without reliance and acceptance by the court in the other proceeding, judicial estoppel is not appropriate."  *Momoh v. Wells Fargo Bank N.A.*, No. 15-cv-4729-HSG, 2016 WL 8729939, at *4 (N.D. Cal. July 1, 2016) (citing *New Hampshire*, 532 U.S. 750-51); *see also Cristobal v. Equifax, Inc.*, No. 16-cv-6329-JST, 2017 WL 1489274, at *7 (N.D. Cal. Apr. 26, 2017) (declining to apply doctrine where there was no showing that the bankruptcy court accepted the plaintiff's position); *Basconcello v. Experian Information Solutions, Inc.*, No. 16-cv-6307-PJH, 2017 WL 1046969, at *4-*5 (N.D. Cal. Mar. 20, 2017) (same).

Accordingly, the Court DENIES, IN PART, Wells Fargo's motions to dismiss and for judgment on the pleadings.[7]

## E.    The FCRA Claims.

### 1.    Statutory Framework.

"Congress enacted the [FCRA] to insure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009).  The FCRA provides for a private right of action for willful or negligent noncompliance with Sections 1681i and 1681s-2(b).  *Id.* at 1154 (citing 15 U.S.C. §§ 1681n, 1681o).  Plaintiffs' claims against the CRA Defendants are based on allegations that the CRA Defendants failed to reinvestigate disputed information under Section 1681i(a)(1), and the claims against the Furnisher Defendants are based on a failure to reasonably investigate the disputed information, pursuant to Section 1681s-2(b).

If a consumer disputes an item of information in his or her file and notifies a CRA of that dispute, "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file[.]"  15 U.S.C. § 1681i(a)(1).  If a consumer provides notice of a dispute to a CRA, the CRA is required to notify a furnisher.  When a furnisher is

---

[7]     If circumstances change, Wells Fargo is free to renew this argument in a subsequent motion.

United States District Court
Northern District of California

notified of a dispute, it is required to:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).[8]

   A plaintiff may recover actual damages for a negligent failure to comply with Sections 1681i and 1681s-2(b) and may recover actual damages, statutory damages, and punitive damages if the failure to comply is willful.  15 U.S.C. §§ 1681n(a), 1681o(a)(1).

   **2.      Plaintiffs Do Not Allege an Inaccuracy.**

   An essential element of Plaintiffs' FCRA claims is that a credit report must contain inaccurate information.  *See Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (noting that neither Section 1681i nor Section 1681s-2, on their face, "require that

---

[8]      A furnisher's duties as set forth in Section 1681s-2(a) "are enforceable only by federal or state agencies."  *Gorman*, 584 F.3d at 1154; *see also Biggs v. Experian Information Solutions, Inc.*, 209 F. Supp. 3d 1142, 1143 (N.D. Cal. 2016) ("a consumer cannot sue a furnisher based simply on the communication of inaccurate information") (citing 15 U.S.C. § 1681s–2(a) and *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002)).

an actual inaccuracy exist for a plaintiff to state a claim," but that "many courts, including our own, have imposed such a requirement"); *see also Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (holding that a plaintiff filing suit for violations of Section 1681i is required to make a "prima facie showing of inaccurate reporting"); *cf. Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (addressing issue in context of claims under Section 1681s-2).[9]

Defendants argue that Plaintiffs fail to state a claim, because Plaintiffs do not allege their credit reports contained entries that were inaccurate. A plaintiff can demonstrate an entry on a report is inaccurate either because the entry is "patently incorrect, or ... is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (internal quotations and citations omitted) (addressing issue in connection with alleged violations by data furnisher); *accord Carvalho*, 629 F.3d at 890. In addition, a plaintiff must allege a factual inaccuracy to state claim under the FCRA. CRAs "collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Carvalho*, 629 F.3d at 891; *see also Chiang*, 595 F.3d at 38; *Cristobal*, 2017 WL 1489274, at *3 n.4.

Plaintiffs' "primary position is that any balance or past-due balance that does not conform with the terms of [their bankruptcy plan's] treatment of the particular claim is inaccurate because" that report would be inconsistent with the terms of the confirmed plan. (*See, e.g.,* 16-cv-5690 *Minner* Dkt. No. 36, Joint Statement at 5:17-21 (hereinafter "Joint Statement").) By way of example, Ms. Minner alleges that, in her Second Report, Wells Fargo reported her account with a balance due of $2,190 and a past-due balance of $1,710, "despite the Court Ordered treatment of [Wells Fargo's] claim." (Minner Compl. ¶ 106.) Ms. Minner alleges "[t]he trustee's accounting shows that the principle [*sic*] owed on the account totals $0.00, and that no past due amount

---

[9]        The *Carvalho* case involved liability under the CCRAA. However, the court noted that that the CCRAA "'is substantially based on the [FCRA]'" and "'judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.'" 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (2003)).

United States District Court
Northern District of California

exists." (*Id.*)  Thus, according to Plaintiffs' theory, it is inaccurate to report anything other than $0 principal and no past due amount on Ms. Minner's account with Wells Fargo.

To support their position, Plaintiffs argue that, pursuant to 11 U.S.C. sections 1122 and 1127, a confirmed bankruptcy plan constitutes a "final and binding judgment and allows for modification of [the creditor defendants'] claim."  (*See, e.g.*, 16-cv-5690 *Minner* Dkt. No. 25, Opp. to Equifax Mot. at 12:13-14.)  To the extent Plaintiffs rely *solely* on the fact that their bankruptcy plans have been confirmed to allege an inaccuracy, their theory has been rejected by the majority of the judges in this District.  *See, e.g., Jugoz v. Experian Information Solutions, Inc.,* No. 16-cv-5687-MMC, 2017 WL 2720184, at *3-*4 (N.D. Cal. June 23, 2017); *Conrad v. Experian Information Solutions, Inc.*, No. 16-cv-04660-NC, 2017 WL 1739167, at *5 (N.D. Cal. May 4, 2017); *Harris v. Experian Information Solutions, Inc.*, No. 16-cv-02162-BLF, 2017 WL 1354778, at *4-*6 (N.D. Cal. Apr. 13, 2017); *Mamisay v. Experian Information Solutions, Inc.*, No. 16-cv-05684-YGR, 2017 WL 1065170, at *4 (N.D. Cal. Mar. 21, 2017); *Rara v. Experian Information Solutions, Inc.*, No. 16-cv-06376-PJH, 2017 WL 1047020, at *4-*6 (N.D. Mar. 20, 2017); *Artus v. Experian Information Solutions, Inc.*, No. 16-cv-03322-EJD, 2017 WL 346022, at *4 (N.D. Cal. Jan. 24, 2017); *Doster v. Experian Information Solutions, Inc.*, No. 16-cv-04629-LHK, 2017 WL 264401, at *4-7 (N.D. Cal. Jan. 20, 2017); *Mortimer v. Bank of America*, N.A., No. 12-cv-01959-JCS, 2013 WL 1501452, at *4 (N.D. Cal. April 10, 2013); *but see Aulbach v. Experian Information Solutions, Inc.*, -- F. Supp. 3d --, No. 16-cv-06331-VC, 2017 WL 1807612, at *3-*5 (N.D. Cal. May 4, 2017).[10]

These courts generally reason that confirmation of a bankruptcy plan restrains a creditor's "ability to collect outside of the plan's terms, … but the debt and its delinquent status still exist, and it is not inaccurate or misleading to report that information to a CRA." *Biggs*, 209 F. Supp. 3d

---

[10]     Plaintiffs argue that many of these cases do not properly distinguish between a "claim" and a "debt."  However, "[s]ection 101(11) of the Bankruptcy Code defines debt as a liability on a claim.  This definition reveals Congress' intent that the meanings of debt and claim be coextensive."  *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990) (internal quotations omitted), *superseded by statute on other grounds; see also In re Davis*, 778 F.3d 809, 812-13 (9th Cir. 2015).

United States District Court
Northern District of California

at 1146.  If a debtor completes all payments, he or she will be discharged.  If, however, the debtor

fails to complete a plan, the bankruptcy proceedings may be dismissed or converted, which returns

"all the property rights [a creditor] held at the commencement of the Chapter 13 proceeding and

renders [it] free to exercise any nonbankruptcy collection remedies available[.]"  *See In re*

*Blendheim*, 803 F.3d 477, 487 (9th Cir. 2015); *see also Mensah v. Experian Information Solutions,*

*Inc.,* No. 16-cv-05689-WHO, 2017 WL 1246892, at *6-7 (N.D. Cal. April 5, 2017) (rejecting

arguments regarding impact of 11 U.S.C. sections 1122 and 1127 on reporting post-confirmation

debts); *Rara*, 2017 WL 1047020, at *5 (confirmed plan "may limit the collection activities of

creditors," but it does not extinguish the underlying debt); *Harris*, 2017 WL 1354478, at *6

(noting that if a debtor fails to "make all required plan payments, the original debt terms ultimately

are reinstated"); *Blakeney v. Experian Information Solutions, Inc.*, No. 15-cv-05544-LHK, 2016

WL 4270244, at *6 (N.D. Cal. Aug. 15, 2016) ("[c]onfirmation of [a] Chapter 13 bankruptcy plan

is not equivalent to discharge of [a debtor's] debts," which does not occur until a debtor has

"completed all payments provided for under the Chapter 13 bankruptcy plan").[11]

        The Court concurs with the majority view and, for the reasons expressed by the *Lugo*

court, declines to follow the reasoning in *Aulbach.  See Lugo*, 2017 WL 2214641, at *4 n.4 (while

plan confirmation "may change a debtor's payment obligations and dictate creditors' abilities to

collect, it does not change the fact of a debt's delinquency;" noting that "new creditors are

undoubtedly interested in defaults on prior accounts when determining an applicant's credit

worthiness"); *accord Jugoz,* 2017 WL 2720184, at *4 n.7.

        Accordingly, to the extent Plaintiffs' claims are based on allegations that an entry on a

credit report is inaccurate solely because their bankruptcy plans have been confirmed, the Court

GRANTS, IN PART, Defendants' motions to dismiss and GRANTS, IN PART, Wells Fargo's

---

[11]    Plaintiffs rely on *In re Luedtke*, No. 02-br-35082-SVK, 2008 WL 2952530 (Bankr. E.D.
Wis. July 31, 2008).  In that case, the issue presented was whether a creditor violated a
confirmation order when it reported certain information to CRAs.  The court found it did and also
stated that "it appears that the Debtor could proceed under" the FCRA.  *Id.*, 2008 WL 2952530, at
*5.  The Court finds the latter statement is dicta and, for that reason, does not find Plaintiffs'
reliance on *In re Luedtke* persuasive.  *Cf. Mensah*, 2017 WL 1246892, at *7; *Mamisay*, 2017 WL
1065170, at *5 n.5.

1   motion for judgment on the pleadings.

2   Plaintiffs also argue that their credit reports are inaccurate, because Defendants do not

3   follow the Metro 2 standards.  In support of this theory, Plaintiffs rely on *Nissou-Rabban v.*

4   *Capitol One Bank (USA), N.A.*, No. 15-cv-01675 JLS (DHB), 2016 WL 4508241 (S.D. Cal. June

5   6, 2016).  Most courts within this District have found the allegations regarding the Metro 2

6   standards are not sufficient, without more, to state a claim and have distinguished or disapproved

7   of *Nissou-Rabban*.  *See, e.g., Mensah*, 2017 WL 1246892, at *8; *Devincenzi v. Experian*

8   *Information Solutions, Inc.*, No. 16-cv-04628-LHK, 2017 WL 86131, at *6 (N.D. Cal. Jan. 10,

9   2017) ("[A]t most *Nissou-Rabban* stands for the proposition that a furnisher that reports

10  delinquent debts during the pendency of a bankruptcy should also report the fact that a bankruptcy

11  is pending so that creditors know that those delinquent debts may be discharged in the future.").

12  For example, the *Basconello* court reasoned:

> noncompliance with Metro 2 standards does not, in and of itself,
> render reporting misleading.  FCRA does not mandate compliance
> with Metro 2 or any other particular set of industry standards.
> Rather, the test is whether a reasonable potential creditor would find
> the reporting 'misleading in such a way and to such an extent that it
> can be expected to adversely affect credit decisions.'  This requires
> something more than the mere fact of noncompliance with an
> industry standard, although noncompliance may be relevant to
> whether reporting is 'misleading.'  The context of the reporting must
> be considered.

19  *Basconcello*, 2017 WL 1046969, at *7 (quoting *Gorman*, 584 F.3d at 1163)

20  The Court agrees with those courts that have found that "deviation from industry standards

21  *by itself* is insufficient to allege inaccurate or misleading reporting."  *Mensah*, 2017 WL 1246892,

22  at *8 (emphasis added).  Accordingly, to the extent Plaintiffs' claims are based solely on the fact

23  that a CRA Defendant or a Furnisher Defendant failed to follow Metro 2 standards, the Court

24  GRANTS, IN PART, Defendants' motions to dismiss and GRANTS, IN PART, Wells Fargo's

25  motion for judgment on the pleadings.

26  Although courts in this District have rejected both of Plaintiffs' theories of inaccuracy, "it

27  appears to be an open question whether such reporting could satisfy the inaccuracy requirement if

28  the report is unaccompanied by any indication that the consumer is in bankruptcy."  *Harris*, 2017

United States District Court
Northern District of California

17

WL 1354778, at *6; *see also Mensah*, 2017 WL 1246892, at *7; *Rara*, 2017 WL 1047020, at 5. *but see Mestayer v. Experian Information Solutions, Inc.*, No. 15-cv-03645-EMC, 2016 WL 631980, at *2, *4 (N.D. Cal. Feb. 17, 2016) (concluding, as a matter of law, that plaintiff could not state an FCRA claim against a furnisher where furnisher reported that plaintiff was in bankruptcy).[12]

In *Cristobal,* the court concluded that "a plaintiff may succeed in stating a claim based on a Metro 2 theory of inaccuracy, so long as she pleads that the particular deviation from the Metro 2 format on her credit report would likely mislead those making credit decisions."  2017 WL 1489274, at *4.  There, the plaintiff alleged "her credit report deviated from Metro 2 because the [Consumer Information Indicator ("CII")] field was left blank when it should have been filed with code 'D,'" which would "prompt those making credit decision to draw a more negative inference regarding [her] credit worthiness,' … and could lower her credit score because FICO's algorithms are premised on compliant Metro 2 data."  *Id.*, 2017 WL 1489274, at *5.[13]  The *Cristobal* court concluded the plaintiff stated a claim under the FCRA and reasoned that "[i]n a world of big data,

---

[12]     A failure to note that an account is disputed could be sufficient to state a claim.  "[A] furnisher does not report 'incomplete or inaccurate' information within the meaning of [section] 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading."  *Gorman*, 584 F.3d at 1163. However, "the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, … gives rise to a furnisher's liability under" Section 1681s-2(b).  *Id.*; *see also Abbott v. Experian Information Solutions, Inc.*, 179 F. Supp. 3d 940, 945 (N.D. Cal. 2016) ("omitting the disputed nature of a debt, if the dispute could materially alter how the reported debt is understood, may be 'incomplete or inaccurate' reporting").  The Court has reviewed the allegations in Plaintiffs Complaints and has considered the parties' Joint Statement. None of the Plaintiffs premise their claims on the fact that a CRA Defendant or a Furnisher Defendant failed to include a notation that a given account was disputed.  (*See, e.g.,* Joint Statement at 4:2-28.)  If any Plaintiff can, in good faith and in accordance with their obligations under Rule 11 make such an allegation, and can allege facts that would show how the dispute could materially alter how the reported debt is understood, that Plaintiff may do so in an amended complaint.

[13]     Plaintiffs have alleged, for example, that a Consumer Information Indicator ("CII") is a "critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer."  (*See, e.g.,* Minner Compl. ¶ 55.)  In the context of these cases, the "CII Metro 2 Code 'D' indicates that a Chapter 13 petition has been filed, is active, but no discharged entered."  (*Id.* ¶ 59.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  … an algorithm designed to calculate [a] FICO score based on the Metro 2 codes might not

2  generate the same score just because the word 'bankruptcy' appears elsewhere on the report." *Id.*;

3  *see also Conrad*, 2017 WL 2017 WL 1739167, at *6-*7.

4       This Court concludes that a plaintiff may be able to show an inaccuracy, based on the

5  materially misleading standard, if a debt is reported as it existed pre-confirmation but a creditor

6  failed to include some information about the fact that a debtor had filed bankruptcy, for example

7  by failing to utilize Metro 2 standards or the CII coding described in Plaintiffs' Complaints. *See*

8  *also Basconcello*, 2017 WL 1046969, at *7-8.[14]  However, the Court finds Plaintiffs' allegations

9  here are insufficient to state a claim.[15]

10       First, the Court finds that Plaintiffs' allegations regarding notice of the disputes are

11  inconsistent.  According to Plaintiffs, "[t]he most basic investigation required each CRA to send

12  all relevant information via an ACDV to the furnishers *which they did not do*."  (Minner Compl.

13  ¶ 121; Robles Compl. ¶ 123; Sims Compl. ¶ 126; Rosales Compl. ¶ 116; De Guzman Compl.

14  ¶ 116; Rice Compl. ¶ 129; Rostron Compl. ¶ 134; Jarosz Compl. ¶ 129; Rodriguez Compl. ¶ 127

15  (emphasis added for all cases).)  Plaintiffs also incorporate by reference their allegations that the

16  CRA Defendants *did* provide notice of their dispute letters to the Furnisher Defendants.  (*See*

17  Minner Compl. ¶¶ 102, 119; Robles Compl. ¶¶ 102, 121; Sims Compl. ¶¶ 102, 124; Rosales

18  Compl. ¶¶ 96, 114; De Guzman Compl. ¶¶ 97, 114; Rice Compl. ¶¶ 109, 127; Rostron Compl.

19  ¶¶ 115, 132; Jarosz Compl. ¶¶ 109, 127; Rodriguez Compl. ¶¶ 109, 125.)  Plaintiffs do not explain

20  these inconsistencies, either in their Complaint or in their opposition briefs to the motions to

21

22  [14]     Plaintiffs' allegations about the Metro 2 standards are not consistent.  For example,
   although they assert the Metro 2 standards are the industry standards, they also allege that

23  "creditors intentionally and routinely ignore credit reporting industry standards for accurately
   reporting bankruptcies and debts including in those bankruptcies[.]"  (*See, e.g.,* Minner Compl.

24  ¶ 7.)  This suggests that the Metro 2 guidelines "do not appear to actually operate as industry
   guidelines," and that "a lender looking at [a] credit report" would not necessarily "misconstrue the

25  information based on an expectation that furnishers comply with Metro 2 guidelines for this
   particular type of report."  *Mamisay*, 2017 WL 1065170, at *6 n.6.  If Plaintiffs choose to amend

26  their complaints, they shall be prepared to address this apparent inconsistency.

27  [15]     Based on the Court's review of the Orders resolving motions to dismiss in other cases filed
   by Plaintiffs' counsel, the allegations in those complaints are largely identical to the Plaintiffs'

28  allegations here.  To the extent the *Cristobal* and *Conrad* courts found those allegations sufficient
   to state a claim, the Court respectfully disagrees for the reasons stated herein.

1   dismiss.

2   　　　The Court concludes that, as a result, they fail to state a claim against the CRA Defendants

3   based on the theory that the CRA Defendants failed to provide notice to the Furnisher Defendants.

4   *Cf. Lugo,* 2017 WL 2214641, at *7; *Mensah*, 2017 WL 1246892, at *9; *see also Maloney v.*

5   *Scottsdale Ins. Co.*, 256 Fed. Appx. 29, 31 (9th Cir. 2007) (noting that although Rule 8 permits

6   pleading inconsistent facts in the alternative, when inconsistent facts are expressly incorporated

7   into each cause of action, facts may constitute judicial admission).  The Furnisher Defendants'

8   obligation to conduct an investigation is based upon the receipt of notice of a dispute.  Thus, if the

9   CRA Defendants *did not* provide notice, Plaintiffs may not be able to state a claim against the

10   Furnisher Defendants.  *See, e.g., Conrad*, 2017 WL 1739167, at *4-5 (dismissing claim against

11   furnisher defendant based on inconsistent allegations of notice).  The Court will grant Plaintiffs

12   leave to amend.  If they choose to amend, Plaintiffs must either explain clearly that they are

13   alleging these facts in the alternative or must include facts that show why these factual allegations

14   are not, in fact, inconsistent.

15   　　　Plaintiffs also do not allege that they disputed any information contained in the Second

16   Reports.  Therefore, in order to determine whether Plaintiffs have stated claims for relief under the

17   FCRA, the Court considers the allegations about the First Reports and the dispute letters that

18   would have triggered the Defendants' obligations under the FCRA.  *See Harris*, 2017 WL

19   1354778, at *4 (finding plaintiff could not premise FCRA claim based on inaccuracies in a credit

20   report plaintiff did not dispute).  The Court has considered the allegations regarding the Second

21   Reports solely to determine whether it is reasonable to infer that the First Reports contained an

22   inaccuracy.

23   　　　According to Plaintiffs, their dispute letters

24   　　　　　... specifically put each Creditor on notice that Plaintiff had filed for
　　　　　bankruptcy and the account was not reporting the bankruptcy

25   　　　　　accurately or worse not at all.  Plaintiff specifically requested each
　　　　　Creditor investigate the proper way to report Plaintiff's bankruptcy.

26   　　　　　Plaintiff noted that there should not be any past due balance
　　　　　reported, the account should not be listed as charged off, transferred

27   　　　　　or sold, with an inaccurate monthly payment or that the account is in

28

United States District Court
Northern District of California

20

1

2
> collections.  There should not be any late payments reported after
> Plaintiff's [bankruptcy] case was filed and to ensure that the proper
> monthly payment was being reported.  Last, Plaintiff noted that …
> Plaintiff expected the accounts to be reported disputed if the
> Creditor disagreed with Plaintiff's dispute.

3

4   (Minner Compl. ¶¶ 100-101; Robles Compl. ¶¶ 100-101; Sims Compl. ¶¶ 100-101; Rosales

5   Compl. ¶¶ 94-95; De Guzman Compl. ¶¶ 95-96; Rice Compl. ¶¶ 107-108; Rostron Compl. ¶¶ 113-

6   114; Jarosz Compl. ¶¶ 107-108; Rodriguez Compl. ¶¶ 107-108.)[16]

7          These allegations are boilerplate allegations and do not clearly distinguish among the

8   named Defendants.  These allegations also essentially rely on the fact that Plaintiffs' bankruptcy

9   plans had been confirmed, which the Court concludes is not enough to state an inaccuracy.

10  Plaintiffs also have not included any information about which accounts they claimed were

11  inaccurate and why that is so.  Plaintiffs also do not state whether they referenced the terms of

12  their bankruptcy plans or the manner in which a particular debt was to be treated under those

13  plans.[17]  Although the Plaintiffs do provide more specific information about alleged inaccuracies

14  in their Second Reports, they do not clearly link those allegations to the dispute letters about the

15  First Reports.  Therefore, the Court concludes the allegations are insufficient to show the First

16  Reports contained an inaccuracy.  *Cf. Mensah*, 2017 WL 1246892, at *8 (Plaintiffs "do not specify

17  whether Experian or Equifax reported the allegedly inaccurate information, as opposed to the other

18  bureaus.  The FCRA claims against the CRA defendants are dismissed on this ground."); *Dyson v.*

19

20  [16]     Based on a chart set forth in the parties' Joint Statement Regarding Legal Issues, and

21  operating under the assumption that the Plaintiffs would know the content of their dispute letters,
    it would appear that each Plaintiff could amend to provide more specific allegations to explain

22  how and why the First Reports allegedly were inaccurate.

23  [17]     In addition, as the FCRA recognizes, "the furnisher of credit information stands in a far

24  better position to make a thorough investigation of a disputed debt than the CRA does on
    reinvestigation.  With respect to the accuracy of disputed information, the CRA is a third party,

25  lacking any direct relationship with the consumer, and its responsibility is to 're investigate' a
    matter once already investigated in the first place."  *Gorman*, 584 F.3d at 1156-57.  It might be

26  plausible to infer that a Furnisher Defendant would know the terms of the plan based on the fact
    that it made a claim in a bankruptcy proceeding.  Without additional allegations that show the

27  CRA Defendants would have, or could have, learned of those terms, the Court is unwilling to
    extend that inference to the CRA Defendants.

28

United States District Court
Northern District of California

1   *Equifax, Inc.*, No. 16-cv-03329-BLF, 2017 WL 1133518, at *3 (N.D. Cal. Mar. 27, 2017)

2   ("perhaps the most obvious deficiency in [the plaintiff's] allegations against Equifax is his failure

3   to allege that the claimed inaccuracies in two different 'three bureau report[s]' were reported by

4   Equifax rather than one of the other CRAs") (emphasis omitted).

5        Accordingly, the Court GRANTS Defendants' motions to dismiss and GRANTS Wells

6   Fargo's motion for judgment on the pleadings for these reasons as well.  The Court will grant

7   Plaintiffs leave to amend.  If they choose to amend, they must allege which CRA Defendant they

8   claim failed to reinvestigate a dispute and, if appropriate, which CRA Defendant they claim failed

9   to omit allegedly inaccurate information from that CRA Defendant's report.  In addition, if

10   Plaintiffs contend an entry on their First Report was inaccurate because there was no information

11   or insufficient information about their bankruptcy proceedings, they must identify the particular

12   creditor at issue, the specific information that rendered the entry inaccurate, and facts to show

13   why, for a particular creditor, omitted or incomplete information about a Plaintiff's bankruptcy

14   proceedings would be "misleading in such a way and to such an extent that it [could] be expected

15   to adversely affect credit decisions"  *Gorman*, 584 F.3d at 1163.

16        **3.**     **Plaintiffs' Allegations of Damages Are Not Sufficient.**

17        The CRA Defendants also move to dismiss on the basis that Plaintiffs' allegations of

18   damages are insufficient.  Wells Fargo also argues that Ms. Minner fails to state a claim, because

19   she fails to allege facts to show damages.  Plaintiffs' only allegations regarding damages are set

20   forth in the final paragraphs of their CCRAA claims.  Plaintiffs allege that "[a]s a direct and

21   proximate result of Defendants' willful and untrue communications, [they have] suffered actual

22   damages including but not limited to inability to properly reorganize under Chapter 13, reviewing

23   credit reports from all three consumer reporting agencies, time reviewing reports with counsel,

24   sending demand letters, diminished credit score, and such further expenses in an amount to be

25   determined at trial."  (Minner Compl. ¶ 143; Robles Compl. ¶ 145; Sims Compl. ¶ 148; Rosales

26   Compl. ¶ 138; De Guzman Compl. ¶ 138; Rice Compl. ¶ 152; Rostron Compl. ¶ 157; Jarosz

27   Compl. ¶ 152; Rodriguez Compl. ¶ 150.)  Because the Plaintiffs do not include these allegations in

28   their claims under the FCRA, they have failed to allege facts to show they were damaged by the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    alleged violations of the FCRA.  However, the Court will assume, for the sake of argument, that

2    Plaintiffs would assert the same facts to show damages under the FCRA.

3        In order to show a willful violation of the FCRA, a plaintiff must show a defendant's

4    violation of the FCRA was knowing or in "reckless disregard of [a] statutory duty." *Safeco*

5    *Insurance Company of America v. Burr*, 551 U.S. 47, 57 (2007); *see also id.* at 68 ("the term

6    recklessness is not self-defining, the common law has generally understood it in the sphere of civil

7    liability as conduct violating an objective standard: action entailing an unjustifiably high risk of

8    harm that is either known or so obvious that it should be known) (internal quotations and citations

9    omitted).  Courts in this District have found that, to the extent the plaintiffs relied on the primary

10   theory of liability espoused in this case, the plaintiffs failed to establish a willful violation of the

11   FCRA, because, in light of the weight of authority against them, the plaintiffs could not show that

12   defendants' actions were "objectively unreasonable." *See, e.g., Rara*, 2017 WL 1047020, at *8-9;

13   *Cristobal*, 2017 WL 1487924, at *5-6.  The Court finds the reasoning of those cases persuasive.

14   In addition, in light of the near uniform conclusion that failure to comply with Metro 2 standards,

15   without more, is not sufficient to show a report is inaccurate, the Court concludes Plaintiffs have

16   not shown Defendants' actions were objectively unreasonable.  Accordingly, the Court concludes

17   Plaintiffs fail to allege facts to show a willful violation of the FCRA and, thus, fail to allege facts

18   to support an award of statutory damages.  However, it will grant Plaintiffs leave to amend to

19   address the theory that the Court has found may prove viable.

20       As to actual damages, "prelitigation costs, such as reviewing credit reports and notifying

21   credit reporting agencies of an inaccuracy are not recoverable damages" under the FCRA.  The

22   plaintiffs in the other cases pending in this District, who are represented by Plaintiffs' counsel in

23   this case, have conceded as much. *See, e.g., Cristobal*, 2017 WL 1489274, at *6; *Rara*, 2017 WL

24   1047020, at *9-10.  Accordingly, the Court concludes those allegations are not sufficient to allege

25   damages.  Plaintiffs may be able to amend to include allegations that "they incurred the cost of

26   obtaining a second report … after initiating [a] dispute and after failing to receive such a report

27   from [a] CRA Defendant." *Jugoz*, 2017 WL 2720184, at *6.

28       Plaintiffs also allege they suffered damages because of an inability to properly reorganize

under Chapter 13. This court finds the *Cristobal* court's reasoning about those allegations of damages persuasive, and it concludes they are insufficient to state a claim. *Cristobal*, 2017 WL 1489274, at *6. Plaintiffs also allege their credit scores were diminished. Whether those allegations alone are sufficient to allege actual damages also appears to be an open question, but it is clear that "a denial of credit is [not] a prerequisite to recovery under" the FCRA. *See Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *compare Cristobal*, 2017 WL 1489274 (finding allegations of diminished credit score sufficient to plead actual damages) with *Rara*, 2017 WL 1047020, at *9 ("a diminished credit score, standing alone, does not represent actual damages"). In light of the Ninth Circuit's holding in the *Guimond* case, the Court finds that allegations of "injury to reputation and creditworthiness" could be sufficient to show actual damages. *See, e.g., Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 945 (C.D. Cal. 2015). Although some Plaintiffs include information about their credit scores, given the dearth of information about the alleged inaccuracies, the Court finds the facts as alleged are not sufficient to show injury to Plaintiffs' reputation or creditworthiness. *Cf. Jugoz*, 2017 WL 2720184, at *6. The Court will grant Plaintiffs leave to amend to include additional facts to support this theory of damages.[18]

Accordingly, the Court GRANTS, IN PART, the motions to dismiss on this basis as well, but it will grant Plaintiffs leave to amend.

## F.      The Court Dismisses the CCRAA Claims.

As noted the CCRAA "is substantially based on the" FCRA. *Carvalho*, 629 F.3d at 889. The Court concludes that, for the reasons set forth above, Ms. Minner, Mr. Sims, Mr. Rosales, Ms. Corrales, and Ms. Rostron fail to state a CCRAA claim against the Furnisher Defendants, and it GRANTS the Furnisher Defendants' motions to dismiss those claims and GRANTS Wells Fargo's motion for judgment on the pleadings on Mr. Rosales' CCRAA claim. The Court also grants Plaintiffs leave to amend for the same reasons it grants them leave to amend their FCRA claims.

---

[18]      In other cases pending before this Court and within this District, some plaintiffs also have alleged they suffered emotional distress damages. If Plaintiffs amend to include facts to support this theory of damages, they are admonished that they must allege facts to support such a theory; legal conclusions will not suffice.

United States District Court
Northern District of California

United States District Court
Northern District of California

**G.      Additional Arguments Raised by Defendants.**

      **1.      Equifax as CRA.**

Equifax argues, in a footnote, that it is not a CRA, as that term is defined in the FCRA. Equifax also states that, for purposes of its motions, it would address the merits of the Plaintiffs' Complaints as pleaded.  Accordingly, the Court expresses no opinion on the merits of this argument, and for purposes of this motion assumes Equifax is a CRA under the FCRA.  If Equifax seeks to renew this argument in any subsequent motions, it may do so, but it shall provide a substantive analysis of the issue.

      **2.      Mr. Sims' Settlement with Golden 1.**

Golden 1 also moves to dismiss Mr. Sims' claims, in part, on the basis of a settlement agreement.  That agreement was entered in Mr. Sims' bankruptcy case, and it contains a general release of claims and a procedure for resolving disputes.  (16-cv-5700, *Sims* Dkt. No. 45-1, Golden 1 Request for Judicial Notice, Ex. C (Stipulation and Settlement Agreement).)   Mr. Sims did not address this argument when he opposed Golden 1's motion.  The Court takes this as a concession by Mr. Sims that Golden 1's argument has merit.  *See, e.g., Walsh v. Nevada Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006).

Therefore, the Court will require Mr. Sims to file a motion for leave to file an amended complaint against Golden 1, which demonstrates why the settlement would not preclude claims against Golden 1.

      **3.      The Transfer of TD Bank's Bankruptcy Claim.**

In Ms. Rostron's case, TD Bank also moves to dismiss, because she alleged TD Bank transferred its claim to a different entity, which filed the claim in the bankruptcy proceedings. Thus, according to TD Bank it cannot be held liable for any post-confirmation reporting violations.  Ms. Rostron failed to address this argument in her opposition brief.  The Court takes as a concession by Ms. Rostron that TD Bank's argument has merit.  *See, e.g., Walsh*, 471 F.3d at 1037.  Therefore, the Court will require Ms. Rostron to file a motion for leave to file an amended complaint against TD Bank, which demonstrates why the transfer would not preclude claims

against TD Bank based on post-confirmation reporting violations.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, the motions to dismiss and motion for judgment on the pleadings, and it GRANTS Plaintiffs leave to amend.  If Plaintiffs choose to amend, they shall file their amended complaints by no later than August 18, 2017.

The Court ORDERS the parties to appear for case management conferences on September 8, 2017, at 11:00 a.m.  The parties in each case shall file a joint case management conference statement by September 1, 2017.  The parties have not moved to consolidate the cases pending before this Court.  Accordingly, they are HEREBY ADVISED: (1) the Court is amenable to setting consolidated deadlines for fact and expert discovery cut-off and expert disclosures, and it would encourage to parties to do so and to coordinate discovery efforts in these cases and in the other cases pending in this district; (2) the Court may be willing to a conduct joint hearing on motions for summary judgment if there are issues that are truly common to all parties; (3) the parties shall propose separate pretrial conference dates and trial dates for each named Plaintiff.

**IT IS SO ORDERED.**

Dated:  July 17, 2017

_____

JEFFREY S. WHITE
United States District Judge